IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:07CV167-MU

SOUTHERN INSURANCE COMPANY )
OF VIRGINIA, )
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　)
　　　　Plaintiff, )
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　)
vs. ) ORDER
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　)
ADVANCED COATINGS, INC., )
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　)
　　　　Defendant. )
_____)

　　　　This is a declaratory judgment action arising out of a claim by Defendant Advanced Coatings, Inc. ("Advanced") for liability insurance coverage under a policy of insurance issued by Plaintiff Southern Insurance Company ("Southern"). Advanced is a painting contractor that paints and applies protective coating systems to buildings and equipment. On January 16, 2004, Advanced submitted an application for insurance to Southern for property, commercial general liability and workers compensation insurance coverage. The application was submitted to Southern by its agent, Burgess Insurance Agency, Inc. On the application, Advanced was identified as being in the "painting business." Prior to applying to Southern for insurance, Advanced had painted a few metal roofs with a Sherwin Williams "Industrial and Marine Coatings" acrylic paint product. In response to a question in the insurance application, Advanced's owner, Adam Denning ("Denning"), indicated that Advanced was not engaged in "roofing" or "asbestos abatement removal installation."

1

The insurance policy issued to Advanced contained a "Biological and Chemical Contaminants Exclusion," which provides the following:

> A. This insurance does not apply to:
> 1. Any sums the insured becomes legally obligated to pay as damages, or any loss, cost, or expense, including costs or expenses for defense, arising out of, traceable to, or relating in any way to the existence, presence . . . or any activity of "biological contaminants" or "chemical contaminants," whether wholly or in part, directly or indirectly, regardless of any other cause or event that contributes concurrently or in any other sequence to such damages, loss, cost or expense . . .

Asbestos is a defined "chemical contaminant."

In November of 2006, Advanced contracted with Public Storage to replace the roof on its storage facility in Yonkers, New York. As part of this job, Advanced was required to remove asbestos from the roof and also remove some obsolete HVAC equipment. Advanced subcontracted these two jobs to ABS Environmental Services, LLC ("ABS"). ABS performed the asbestos abatement without incident, but on November 12, 2006 its employees started a fire with a welding torch while removing a standing pipe from the roof. The fire caused damage to the Public Storage building and to its customers' personal property. Advanced was not at the site when the fire started.

Initially, the managers of both ABS and Public Storage acknowledged liability on the part of ABS. American Safety, ABS's insurance carrier, assigned adjusters and began the claims process. However, on January 11, 2007, the ABS adjuster wrote to Advanced asserting that Advanced was liable. Advanced then reported this to Southern, and a claims file was opened. The parties were originally under the impression that American Safety ultimately paid the claim, but learned on October 24, 2008 that the underlying claim had not been paid.

Advanced and Public Storage continued to demand that American Safety honor the

2

claims. During the time American Safety was balking, Public Storage customers who had suffered damage to their personal property began to complain. At the time, Public Storage was holding $155,000 in payments due to Advanced for work that had been completed. An attorney for Public Storage suggested to Denning that if he could secure a letter from Southern "accepting" the claims with a reservation of rights, the check would be released. The Southern adjuster, Gail Jefferson, explained to Denning that the claims would not be "accepted" since there was no legal liability on the part of Advanced. In response to Denning's push to get a letter to get his bill paid, Jefferson wrote a letter, copied to Public Storage, advising that the claim was still being investigated and all parties would be advised of any conclusions. Denning refused to give up and wrote Jefferson to demand a detailed reservation of rights letter, and also got Mike Burgess, his agent, to call Jefferson to advise her that all Public Storage needed was a complete reservation of rights outlining what the issues were. In response to Denning's demand, Jefferson wrote a reservation of rights letter to Denning, copied to Public Storage. The letter listed all the various issues that were being investigated, including potential misrepresentations in Advanced's application for insurance. The letter noted that Advanced had denied doing any roofing work in its application. The letter further advised that the file had been referred to coverage counsel for review. After receiving a copy of this letter, Public Storage halted most of its business with Advanced.

On May 9, 2007, Southern cancelled the policy due to nonpayment of premiums. The cancellation notice made no mention of misrepresentations in the application.

On April 18, 2007, Southern filed the present declaratory judgment action seeking a declaration that the Biological and Chemical Contaminants policy exclusion bars any coverage

3

for the Yonkers fire. Southern also seeks to have the policy voided ab initio for misrepresentations on the application. Advanced has counterclaimed, asserting (1) that the reservation of rights letter was defamatory; (2) that Southern breached its contract of insurance; and (3) that Southern engaged in bad faith and violated the North Carolina Unfair Claims Settlement Act.

Advanced is seeking partial summary judgment that the Biological and Chemical Contaminants exclusion is not applicable and does not exclude coverage for the claim at issue, that Southern is estopped from asserting the defense of misrepresentation in the application, and that the claim is covered under the Southern policy. Southern has moved for summary judgment as to its claims and the counterclaims of Advanced.

Summary judgment is appropriate when, viewing the facts in the light most favorable to the non-moving party, there is no genuine issue of any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(e); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). Summary judgment requires a determination of the sufficiency of the evidence and not a weighing of the evidence. <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242 (1986). The party opposing the motion may not rest upon its pleadings but instead must provide evidence or point to evidence already on the record that would be sufficient to support a jury verdict in its favor. <u>Id.</u> at 248. The movant may be entitled to summary judgment merely by showing that the other side will not be able to prove an essential element of its case with respect to which it has the burden of proof. <u>Celotex</u>, 477 U.S. at 322-23.

**I. The Biological and Chemical Contaminants Exclusion:**

The court will first address the issue of applicability of the Biological and Chemical

Contaminants Exclusion. Advanced contends that since the asbestos removal had nothing to do with the fire the exclusion does not apply as a matter of law. Southern contends that the language of the exclusion is worded so broadly that it encompasses all claims, related in any way, directly or indirectly, to the presence of asbestos. Southern argues that but for Advanced's agreement to remove the asbestos as part of its work, it would not have had the job at all, and therefore would not have been in a position to have any claim asserted against it. Southern argues that this is an indirect, but real, relation between the presence of asbestos and the claim for damages.

Advanced argues, and the court agrees, that the language relied upon by Southern is anti-concurrent language found in many policies, which is designed to preclude coverage where there is a covered and non-covered peril operating concurrently to cause a loss. It is intended to get around the "dominant or efficient cause" standard under traditional insurance coverage law. This standard results in a covered loss even if damage occurs as the result of the concurrent operation of a covered and a non-covered cause. *See Erie Ins. Exchange v. Bledsoe*, 141 N.C. App. 331; 540 S.E.2d 57 (2000).

Southern's interpretation of the exclusionary language is simply untenable, and carried to its logical extreme, could exclude virtually any claim for damages. For example, suppose Advanced was hired by Public Storage to replace the roof and then to paint the outside of its building. Advanced hires ABS to remove the asbestos, the roof is replaced, and the paint work begins. If damage occurs during the paint work, Southern could make the same argument: but for the asbestos removal, Advanced would never have been on the job and the damage that occurred during the painting would never have happened.

5

The court finds that as a matter of law the Biological and Chemical Contaminants Exclusion does not apply to preclude coverage.

**II. Misrepresentation:**

Southern has moved for summary judgment as to its claim to avoid the policy for misrepresentation. Southern has alleged that Denning falsely represented on the insurance application that Advanced did not do roofing work.

"It is a basic principle of insurance law that the insurer may avoid his obligation under the insurance contract by showing that the insured made representations in his application that were material and false." *Bell v. Nationwide Ins. Co.*, 146 N.C. App.725, 726; 554 S.E.2d 399, 401 (2001) (quoting *Pittman v. First Protection Life Ins. Co.*, 72 N.C. App. 428, 433; 325 S.E.2d 287, 291 (1985)). A misrepresentation is considered to be material if "'the knowledge or ignorance of it would naturally influence the judgment of the insurer in making the contract and accepting the risk.'" *Id.* (quoting *Bryant v. Nationwide Mut. Fire Ins. Co.*, 67 N.C. App. 616, 621; 313 S.E.2d 803, 807 (1984) *rev'd on other grounds*, 313 N.C. 362; 329 S.E.2d 333 (1985)).

Advanced applied for insurance with Southern on January 16, 2004. The application was filled out by Mike Burgess, as Denning answered each question on the application. One of the questions was:

> Has the insured, now or in the past, or will the insured engage in the following:
> ...
> Roofing

The answer given was "no." Denning signed the application in the presence of Burgess. Robert Smith, Assistant Vice President of commercial lines underwriting for Donegal Mutual

(Southern's parent company), testified in his deposition that Donegal/Southern has never been willing to insure roofing operations and stated that "We would not have accepted the account if we had reason to believe they had done or would do roofing."

Southern has submitted evidence that Advanced signed a Master Agreement to do work for Public Storage on January 17, 2003. Each job was described as "roofing" on the Public Storage records and for each job, a Release submitted by Advanced with its invoice indicates roofing work. However, the records also refer to roof "coating" and "sealing." Advanced argues that Denning considered installing a roof coating system on roofs to be "painting" not "roofing." Through surveys and audits over the life of the policy, Southern continued to make specific inquiry into the subject of roofing, and Advanced indicated that it did not perform roofing work. Denning admits in his deposition that Advanced did their first roof "installation" in May of 2004.

Upon reviewing the submissions of the parties, the court concludes that a genuine issue of material fact exists as to whether Advanced engaged in misrepresentation.

**III. Estoppel Defense:**

Advanced has asserted the defense of estoppel, alleging that Southern should be estopped from asserting the defense of misrepresentation in the application. Advanced contends that the evidence shows that Southern knew that Advanced was engaged in roofing work, and despite this knowledge, continued to accept premiums and even renewed the policy. Accordingly, Advanced argues that as a matter of law, Southern should be estopped from asserting fraud in the application.

Advanced first argues that Southern cannot claim that Advanced misrepresented the

7

nature of its roofing work in the application because Southern was in fact aware that Advanced was performing roofing work, yet continued to accept premiums from Advanced and even renewed the policy. [1] Advanced points to the knowledge of Burgess and information contained in the claims and underwriting files to support its estoppel argument.

Advanced correctly points out that Burgess was acting as an agent of Southern in his dealings with Advanced and thus his knowledge is imputed to Southern. Citing to Burgess's deposition, Advanced argues that Burgess knew Advanced was doing roofing work because Denning called him and told him. Burgess has filed an affidavit stating that he was not aware that Advanced was doing any roofing work. He states that Denning called him about the possibility of doing roofing work for Public Storage. Burgess states that he told Denning he was not covered for roofing under the Southern policy, but gave him the name of another agent who did roofing contractor coverage. He was aware that Denning elected not to buy the roofing coverage from the agent Burgess recommended. Burgess states that he was never aware (until he learned of the Yonkers fire) that Advanced was actually going through with doing the roofing work. Advanced has moved to strike Burgess's affidavit, arguing that it contradicts his deposition testimony. Yet, if one reads the testimony and the affidavit, it appears that they actually compliment one another. The Motion to Strike will be denied, and the court finds that there is an issue of fact as to whether Burgess had knowledge that Advanced was actually doing roofing work.

Advanced also argues that Southern's Claim Department and Underwriting Department

---

[1] Southern is not moving for summary judgment on the issue of whether Advanced misrepresented the fact that it conducted out-of-state operations.

knew of Advanced's roofing work because of a workers compensation claim that arose in February 2006. Advanced was installing a new roof at the building where the employee was injured. After reviewing the evidence, it appears to the court that there is a genuine issue of material fact as to Southern's "corporate knowledge."

Advanced further contends that when Southern treated the policy as being in full force and effect until May 9, 2007, it waived its claim that the policy was void from its inception as a result of misrepresentations in the application. The policy was cancelled on that date due to nonpayment of premiums. This declaratory judgment action was filed on April 18, 2007.

Advanced made its final premium payment to Southern on February 1, 2007 and the next payment was due April 17, 2007. It appears to the court that there is an issue of fact as to whether Southern actually knew of Denning's alleged misrepresentations at the time it accepted the last premium payment. Accordingly, summary judgment is not appropriate.

**IV. Breach of Contract Counterclaim:**

Advanced alleges that Southern breached its insurance contract "by wrongfully denying all liability to the Defendant under the policy resulting in loss and damage to the Defendant," and by "failing to adjust and/or pay the fire loss of Public Storage which occurred on November 12, 2006." After reviewing the submissions of the parties, it appears to the court that genuine issues of material fact exist that preclude summary judgment as to this counterclaim.

**V. Defamation Counterclaim:**

Advanced alleges in its defamation counterclaim that the reservation of rights letter sent by Southern on March 21, 2007 to Denning and copied to Public Storage constituted libel and/or libel per se. The letter stated that "Southern Insurance is also investigating the possibility of

misrepresentation on your original policy application." Advanced alleges that these remarks tended to impeach it in its trade or profession.

In order to be actionable, a defamatory statement must be false; an admission as to the truth of the statement is a complete defense. During Denning's deposition, he admits that all the statements in the letter are in fact true. When asked if there was any statement in the letter which is false, Denning answered "No." Advanced argues that Gwen Jefferson, the author of the letter, was deposed after Denning's deposition and that her testimony establishes that there was no investigation of misrepresentation. A review of Ms. Jefferson's deposition reveals that as of March 7, 2007, the file had been sent to coverage counsel. Moreover, it is clear from Jefferson's testimony that some steps had been taken to conduct an investigation. The investigation may not have been conducted in an ideal manner, but there is no evidence that there was no investigation at all. Thus, the statement in the letter to the effect that Southern was "investigating the possibility of misrepresentation" cannot be considered false. Accordingly, there is no genuine issue of material fact as to this claim.

**VI. Bad Faith Counterclaim:**

Advanced's Third Counterclaim alleges bad faith and violations of the North Carolina Unfair Claims Settlement Act, N.C. Gen. Stat. §58-63-15(11). Having reviewed and considered the submissions of the parties, the court concludes that numerous issues of fact preclude summary judgment as to this counterclaim.

IT IS THEREFORE ORDERED that the Plaintiff's Motion for Summary Judgment is hereby GRANTED as to the defamation counterclaim, and hereby DENIED as to all other claims and counterclaims;

IT IS FURTHER ORDERED that the Defendant's Motion for Partial Summary Judgment is hereby GRANTED as to the Biological and Chemical contaminants exclusion, and DENIED as to coverage and the defense of estoppel;

IT IS FURTHER ORDERED that Defendant's Motion to Strike the Burgess Affidavit is hereby DENIED.

Signed: December 4, 2009

Graham C. Mullen
United States District Judge